[Civ. No. 893.  First Appellate District.—May 20, 1912.]

DANIEL O'CONNELL, in Behalf of Himself and Others, Appellants, v. JOHN E. BEHAN, as Clerk of the Board of Supervisors, Respondent.

SAN FRANCISCO CHARTER — CONSTRUCTION—PETITION OF ELECTORS TO SUPERVISORS TO ACQUIRE UTILITIES—DUTY OF CLERK TO VERIFY SIGNATURES—MEANS NOT PROVIDED—MANDAMUS.—Though the charter of the city and county of San Francisco makes it the duty of the clerk of the board of supervisors to examine, verify and certify to the board the signatures of the requisite number of electors to a petition to said board for the acquisition of public utilities, yet where the signatures thereto are not verified by any signer, and no means are provided in the charter by which the clerk could ascertain or verify the signatures, or certify that the petition contains the requisite number of genuine signatures of electors, he cannot be required to do so by a writ of mandate.

ID.—SUFFICIENT DEFENSES TO PETITION FOR WRIT—DENIALS—SEPARATE DEFENSES.—Where the answer of the clerk of the board of supervisors to the petition for the writ of mandate, besides practically denying all the material allegations of the petition, also set forth as a separate defense the facts showing the impossibility of complying with the charter in ascertaining, verifying, and certifying the genuineness of the signatures to the petition of the electors for the acquisition of public utilities, and also further averred in justification of his refusal to certify to the genuineness of the signatures that the petition of the electors did not conform to the requirements of section 3 of article XII of the charter, such defenses, if sustained, are sufficient to defeat the writ.

ID.—JUDGMENT FOR RESPONDENT—APPEAL — PRESUMPTIONS—EVIDENCE NOT REVIEWABLE.—Where, after trial of the issues joined upon the petition for the writ, the judgment was against the petitioner and in favor of the clerk respondent, from which the petitioner appealed upon the judgment-roll and a bill of exceptions which does not purport to set out the evidence, and the findings state that the case was tried and finally heard upon the pleadings "and testimony given at the trial," it must be presumed that the findings speak the truth, and a statement in appellant's brief that the evidence was stipulated must be disregarded; and it must also be presumed that the evidence was sufficient to support the findings, and its insufficiency cannot be reviewed.

ID.—LIMITATION OF REVIEW UPON APPEAL—SUFFICIENCY OF FINDINGS TO SUPPORT CONCLUSIONS AND JUDGMENT.—It is held that, under the record before this court, its review is limited to the single question whether the findings support the conclusions of law and the judgment based thereon; that though the court found for appellant as to preliminary matters in issue, such as the preparation and filing of the petition for acquiring utilities, with the requisite number of signers, yet its findings for respondent upon all of the vital issues in the case constitute a sufficient basis for its conclusions of law and judgment for the respondent.

ID.—SIGNATURES OF "ELECTORS" TO PETITION FOR UTILITIES—PLEADING —PETITION FOR MANDATE — CAUSE OF ACTION — FINDING—FATAL FAILURE OF PROOF.—Since section 3 of article XII of the San Francisco charter requires that a petition for acquiring public utilities must be signed by the requisite number of "electors" of the city and county of San Francisco, if the petition for the writ of mandate had failed to allege that the petition to the board of supervisors for such acquisition was signed by such "electors," no cause of action would have been stated for the relief demanded. Although the petition for the writ did so state, yet the finding of the trial court that it was not in fact so signed established a failure of proof that was necessarily fatal to the action of plaintiffs for the

writ; and the finding upon this issue alone was sufficient in itself to justify and support the judgment against the plaintiffs.

ID.—CONSTRUCTION OF CHARTER—VERIFYING SIGNATURES TO DISTINCT PETITIONS — PUBLIC UTILITIES—SUBMISSION OF ORDINANCE—DISTINCT MODES.—The charter mode for verifying the signature to a petition by "electors" for the acquisition of public utilities under section 3 of article XII of the charter, which is imposed upon the clerk of the board of supervisors, without providing adequate means, is to be clearly distinguished from the mode of verifying the signatures to a petition for the submission of an ordinance under another provision of the charter, which are to be signed in different papers by "voters,". each being bound to state "his street and number," and each paper being required "to be verified by one of the signers thereof." There is no such provision of any kind under section 3 of article XII of the charter, nor any requirement that the "electors" shall append to their signatures their "place of residence."

ID.—DISTINCTION BETWEEN "ELECTOR" AND "VOTER"—EFFECT OF STATEMENT IN PETITION TO ACQUIRE UTILITIES—POSSIBILITY OF VERIFYING SIGNATURES BY COMPARISON—MATTER OF OPINION.—A citizen may be an "elector" without being a "voter." If he is twenty-one years of age, and has resided in the state one year, in the county and precinct thirty days, he is an "elector." In order to be a "voter" he must be a "registered elector." If the petitioners seeking to acquire utilities had merely stated that they were "electors of the city and county," omitting their places of residence, it would have been impossible for the clerk of the board of supervisors to verify their signatures. Where the only suggested means of verifying them is an unrequired statement in their petition that the signers are "registered electors," if it·be assumed that they had the right to insert such statement, and that the clerk, by comparison of handwriting, might be able to form an opinion of the genuineness of the signatures, he could only be required to certify such "opinion."

ID.—DUTY OF CLERK AS TO CERTIFICATION OF SIGNATURES ABSOLUTE.— The clerk, by section 3 of article XII of the charter, is required to certify that the signatures are in fact genuine, and the board of supervisors can act only "upon receiving a certificate from the clerk that the petition or petitions contain the required number of genuine signatures." The clerk is not required to certify that the signers of the petition are electors of the city and county, but merely that their signatures are genuine.

ID.—DUTY OF CLERK TO REFUSE CERTIFICATION OF IMPROPER PETITIONS. Even if the clerk had the means at hand necessary for the performance of the task of verification and certification of the genuineness of the signatures, it was clearly his duty to refuse to do so, if the petitions themselves were not such as are prescribed by section

19 Cal. App.—8

3 of article XII of the charter, and included improper subject matter thereunder, for the purchase only of existing utilities owned by corporations, together with their franchises.

ID.—"PLANS AND ESTIMATES OF COST"—ORIGINAL CONSTRUCTION OR COMPLETION OF PROPOSED PUBLIC UTILITY.—The plans and estimates of cost which the board of supervisors is directed to procure are those of original construction or completion by the city and county of a proposed public utility, and not those of the past construction or completion of existing utilities owned by any other corporation or person. The term "estimates" is not an appropriate expression to indicate the cost of past construction or completion. Under section 1 of article XII of the charter, the plans and estimates of cost to be procured from the board of public works are those of original construction by the county.

ID.—PROVISIONAL PURCHASE OF EXISTING UTILITY BASED ON PLANS AND ESTIMATES.—Although there is provision by which the board may in the end submit a proposition for the purchase of an existing utility, yet the proceeding must be inaugurated by a petition for original construction and completion by the city and county, under plans and estimates properly procured, and the board may thereafter solicit offers for the purchase of an existing utility such as is mentioned in the petition. If the price demanded is too high, the board must proceed to formulate propositions according to its plans.

ID.—PURCHASE OF FRANCHISES NOT ALLOWED.—There is no provision of the charter which authorizes the acquisition of franchises of a corporation by the city and county. If it should acquire the physical properties of the proposed corporations, it would not need to purchase their franchises in order to operate them. The plans and estimates furnished by the city engineer could not possibly include an estimate of the cost of the franchises.

ID.—SUFFICIENT REASONS FOR DENYING WRIT OF MANDATE.—It is held that the reasons are amply sufficient to justify the action of the trial court in denying and dismissing the petition for the writ of mandate.

ID.—MATTER PROPERLY STRICKEN FROM PETITION — OPINION OF CITY ATTORNEY.—The court did not err in striking from the petition as irrelevant matter an opinion given by the city and county attorney, at the request of the board of supervisors, which could serve no useful purpose in the petition, and was neither binding upon such attorney or upon the clerk respondent, whom he represents in this proceeding, or upon the court, which struck it out.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco denying a petition for a writ of mandate. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Daniel O'Connell, for Appellants.

Percy V. Long, City Attorney, John T. Nourse, Assistant City Attorney, and Thos. V. Cator, for Respondent.

LENNON, P. J.—The preamble of article XII of the charter of the city and county of San Francisco declares that it is "the purpose and intention of the people of the city and county of San Francisco that its public utilities shall be gradually acquired and ultimately owned by the city and county"; and with this purpose in view it is provided by section 1 of the same article that "whenever the board of supervisors by ordinance . . . shall determine that the public interest or necessity demands the acquisition, construction or completion of any public utility or utilities by the city and county, or whenever electors shall petition the board of supervisors, as provided by section 3 of this article, for the acquisition of any public utility or utilities, the board of supervisors must procure from the board of works, through the city engineer, plans and estimates of the cost of *original* construction and completion by the city and county of such public utilities."

Section 3 of the same article, and which is specifically referred to in section 1, provides that "Whenever a petition or petitions, each signed by electors of the city and county equal in number to fifteen per centum of all the votes cast in the city and county at the last preceding general election, shall be presented to the board of supervisors, setting forth that the signers of each petition or petitions favor the acquisition of the public utilities therein named, it shall be the duty of the clerk of the board of supervisors to immediately proceed to examine and verify the signatures to such petition or petitions, and to certify the result of such examination to the board of supervisors. If the required number of signatures be found genuine, the clerk shall transmit to the mayor an authentic copy of such petition or petitions without the signatures thereto. Upon receiving a certificate of the clerk that the petition or petitions contain the required number of genuine signatures, it shall be the duty of the board of supervisors to procure, in the manner specified in sec. 1 of this

article, plans and estimates of the cost of original construction and completion of such public utility or utilities named in such petition or petitions.''

''Thereafter the board of supervisors shall formulate for submission to the electors of the city and county, at a special election called for the purpose, a separate proposition for the acquisition of each public utility named in such petition or petitions.''

The section and article of the charter just quoted further provides and directs that the signatures to a petition for the acquisition of public utilities shall be examined and verified, and propositions formulated thereunder completed, within six months after the filing of said petition with the board of supervisors.

On February 15, 1908, Daniel O'Connell et al., the appellants herein, presented to the board of supervisors of the city and county of San Francisco a petition, purporting to be signed by 14,616 registered electors of the said city and county, which specified in each instance the residence address of each signer, and prayed that the franchises and the real and personal property of several separate and distinct public utility corporations be acquired by said city and county.

On March 2, 1908, and on April 8, 1908, supplemental petitions to the same effect, containing 4,790 additional signatures of purported electors, were presented to the board of supervisors. These several petitions in effect constituted but one petition, wherein the signers declared in favor of the acquisition of the specified public utilities, and prayed that the board of supervisors proceed to ascertain the cost of such acquisition, and then submit to the registered electors of the municipality, at a special election to be called for that purpose, separate propositions for the acquisition of each of said public utilities, and the amount of a bonded indebtedness, if any, to be incurred therefor.

The existing public utilities sought to be acquired by the petitioners were specified in the petition to be:

(1) The franchises and real and personal property owned, controlled and operated by the United Railroads of San Francisco and necessary for the successful operation of its street railway system on streets and avenues of said city and county of San Francisco.

(2) The franchises and real and personal property owned, controlled and operated by the California Street Cable Railway Company on the streets of the city and county of San Francisco and necessary for the successful operation of the street railway system of said company.

(3) The franchises and real and personal property of the Pacific States Telephone and Telegraph Company, in said city and county of San Francisco, necessary for the successful operation of its telephone system in said city and county of San Francisco.

(4) The franchises and real and personal property of the Home Telephone Company in said city and county of San Francisco, necessary for the successful operation of its telephone system in said city and county of San Francisco.

The petition in question was by the board of supervisors referred to its clerk, the respondent herein, and he in due time made and filed the following report:

"In accordance with the mandate of the charter I have proceeded to examine the signatures to the foregoing petition, and as the result of said examination report as follows:

"The petition is not verified in any manner by the oath of any person or of any signer thereto.

"There are no means by which I can verify and ascertain whether such signatures are genuine, and by reason of that fact it is not possible for me to make a certificate as required by the charter, that such petition contains the required number of genuine signatures."

Respondent's report and action upon the petition were subsequently approved and adopted by the board of supervisors; whereupon, with substantially the facts herein stated as a basis for the application, the appellants herein instituted *mandamus* proceedings in the superior court of the city and county of San Francisco to compel the respondent, as the clerk of the board of supervisors, to immediately proceed to examine and verify the signatures to said petition in accordance with the charter provisions, and certify the result to the board of supervisors. An alternative writ of mandate was issued, and for answer thereto the respondent, in addition to practically denying all of the material allegations of the petition, pleaded as a separate defense thereto that neither the charter of the city and county of San Francisco nor any

other law provided any adequate or effective means by which respondent could verify the genuineness of the purported signatures to the petition presented to the board of supervisors for the acquisition of the several specified public utilities; that no adequate or effective means existed whereby respondent could verify the genuineness of the signatures appended to said petition, and that, therefore, he could not truthfully and with knowledge of the fact make a certificate that said petition contained the number of genuine signatures required by the provisions of the charter.

Respondent Behan further averred in justification of his refusal to certify to the genuineness of the signatures that the petition did not conform to the requirements of section 3 of article XII of the charter, under which section and article, as alleged in the petition for mandate, the petition for the acquisition of the several public utilities was prepared and presented to the board of supervisors.

A trial was had upon the issues thus raised, which resulted in a judgment for the respondent, from which an appeal has been taken upon the judgment-roll and a bill of exceptions, which does not purport to set out any of the evidence taken upon the trial.

Counsel for appellants in his closing brief asserts that the case was tried upon the verified petition for the writ of mandate, respondent's answer thereto, and the admission of counsel that the parties would testify to the matters as stated in the said verified pleadings, and that there was no other evidence offered. The record before us does not sustain counsel's assertion in this behalf. On the contrary, it is expressly stated in the trial court's findings of fact that this proceeding came on for trial and final hearing upon the pleadings "and testimony given at the trial." If it be a fact, as counsel for appellant insists, that the findings of fact were based upon stipulated evidence, then he should have taken the pains to make the record show not only the stipulation, but the facts as well which were stipulated to be in evidence. In the absence of such a showing we must take the record as we find it. Presumably the findings speak the truth when they recite that the case was tried "upon the pleadings and testimony given at the trial"; and inasmuch as the bill of exceptions does not even pretend to set out in any manner or

form all or any part of the testimony adduced at the trial, obviously we cannot pass upon the sufficiency of the evidence to support the judgment. In the absence of a bill of exceptions showing the evidence offered and received at the trial, we must assume that the evidence fully supports the findings of the trial court in every essential particular; and, therefore, upon the record before us, we are limited to a consideration of the single question of whether or not the findings of fact support the conclusions of law adduced therefrom, and the judgment subsequently rendered and entered thereon.

It is conceded by respondent that fifteen per centum of all the votes cast at the general election held in the city and county of San Francisco preceding the filing of the petition would be 8,712, and that in so far as the mere number of signers was concerned the petition was in conformity with the requirements of the charter. It is disputed, however, that all or any of the signers of the petition were electors of the city and county, and it is further insisted upon behalf of the respondent that the petition in other respects, which will be adverted to later, was so insufficient in matters of form and substance as to render it radically defective and utterly useless for the accomplishment of the purpose for which it was intended.

The trial court in its findings of fact found in favor of appellants upon all of the preliminary matters and things put in issue by the pleadings, such as the preparation and filing of the petition for the acquisition of the several specified public utilities, the requisite number of signers thereto, the refusal of respondent to verify and certify the same, etc., but found against the appellants upon the matters and things which constituted the vital issues of the case. Among other things the court in substance found that the allegation of the petition for mandate, which recited that the petition presented to the board of supervisors for the acquisition of the specified public utilities was signed by electors of the city and county of San Francisco, was not proven as a fact; that no matter or thing appearing upon the face of said last-mentioned petition constituted any proof of the genuineness of the signatures thereto; that there does not exist any adequate or effective means by which the respondent, as clerk of the board of supervisors, or otherwise, might ascertain, so as to have personal knowledge thereof, that the signatures to the

said petition, or a sufficient number thereof, are the genuine handwriting of the persons purporting to have made the same; that respondent could not with personal knowledge of the truth thereof make the certificate required by section 3 of article XII of the charter.

With these latter findings primarily as the basis thereof the trial court drew the conclusions of law that the petition which was presented by the plaintiffs in this proceeding to the board of supervisors was and is insufficient under section 3 of article XII of the charter of the city and county of San Francisco; and that, as no adequate or effective means existed by which respondent, as clerk of the said board, could verify the genuineness of the signatures to the petition in question, he was not and could not be required to make the certificate called for by the charter provisions.

We are of the opinion that the conclusions of the trial court are correct.

Section 3 of article XII of the charter clearly provides and requires that a petition favoring the acquisition of public utilities must be signed by "electors" of the city and county of San Francisco. If the petition for the writ of mandate in the present case had failed to allege that the petition presented to the board of supervisors was signed by "electors" of the city and county, no cause of action would have been stated for the relief demanded; and respondent herein, in the absence of amendment of the pleadings, would have been entitled to judgment upon demurrer or upon the pleadings. Although the petition in question purported to be signed by electors, nevertheless if it was not in fact so signed—as the trial court found—there was a failure of proof which was necessarily fatal to the plaintiffs' action, and the finding of the trial court upon this issue alone was sufficient in itself to justify and support a judgment against the plaintiffs.

The remaining points presented upon this appeal require an interpretation of the scope and effect of section 3 of article XII of the charter, and relate also to the apparent defect in the charter itself in so far as it fails to provide an adequate method, whereby the clerk of the board of supervisors may verify the genuineness of the signatures appended to a petition for the acquisition of public utilities.

Upon this phase of the case the learned judge of the trial court expressed his views in support of the judgment in a written opinion, which is incorporated in and in effect constitutes the whole of the bill of exceptions which accompanies the judgment-roll upon this appeal. Ordinarily, the trial judge's opinion in rendering judgment has no proper place in a record on appeal, and the purpose of presenting to us in this instance a bill of exceptions which, aside from a mere recital that judgment was rendered for the respondent, is made up entirely of the trial judge's opinion, is not readily apparent. But whatever the purpose may have been, the opinion is before us in a duly authenticated bill of exceptions, and inasmuch as it is in entire accord with our views of the law and the interpretation which we think should be placed upon the charter provisions under consideration, the views and conclusions of the trial judge are hereby adopted as the views and conclusions of this court. In so far as it is pertinent to the particular subjects immediately in discussion, the opinion of the trial court is as follows:

"The ground upon which the defendant clerk has refused to proceed to examine and verify the signatures to the petition is that the charter has not prescribed any procedure for ascertaining the genuineness of the signatures, and that he cannot be required to certify to a fact as to which he has no knowledge or means of knowledge.

"In the case of a petition for the submission of a proposed ordinance to a popular vote the charter has provided that the signers must be voters, that the signatures need not all be appended to one paper, that each signer shall add to his signature his place of residence, giving the street and number; and that one of the signers of each paper shall make oath that each signature to the paper is genuine.

"In the case of a petition for acquiring a public utility, section 3 above cited does not require it to be signed by voters but only by electors; and there is no requirement that the signers append to their signatures their respective places of residence. A citizen may be an elector without being a voter. If he is a male citizen of the United States, twenty-one years of age, and has resided in the state one year, in the county ninety days, and in the precinct thirty days, he is an elector. In order to be a voter he must be a registered elector.

"If the petitioners in this case had merely stated that they were electors of the city and county, and omitted a statement of their respective places of residence, it would have been impossible for the clerk to verify their signatures. The only means suggested for verifying the signatures in the present case is a comparison with those in the great register, it being stated in the petitions that the signers are registered electors. Even assuming that the petitioners have the right to insert in the petitions matters not required by the charter, and that the clerk might be able, by comparison of hands, to form an opinion as to the genuineness of the signatures, he could not be required to do more than certify such opinion. The section under consideration requires him to certify that the signatures are in fact genuine, and the board of supervisors can act only 'upon receiving a certificate from the clerk that the petition or petitions contain the required number of genuine signatures.'

"It will also be observed that, by section 3, the clerk is not required to certify that the signers of the petition are electors of the city and county, but merely that their signatures are genuine. Even if the clerk had the means at hand necessary for the performance of the task required of him, it was clearly his duty to refuse to do so if the petitions themselves were not such as are prescribed by section 3 of article XII of the charter.

"The plans and estimates of cost which the board of supervisors is directed to procure are those of original construction or completion, by the city and county, of a proposed public utility, and not those of the past construction or completion of existing utilities owned by any other corporation or person.

"The term 'estimates' is not an appropriate expression to indicate the determination of the cost of past construction and completion. Such determination would be of a question of fact, and could only be made after receiving competent evidence of actual cost. Section 1 expressly provides that the plans and estimates of cost to be procured from the board of public works are those of original construction and completion by the city and county.

"It is therefore clearly implied that the petitions authorized by section 3 are limited to such public utilities as are to be constructed and completed by the city and county. Section

2 provides that before submitting propositions to electors for the acquisition by original construction or condemnation of public utilities, the board of supervisors must solicit and consider offers for the sale to the city and county of existing utilities. Although the board may in the end conclude to submit a proposition for the purchase of an existing utility, the proceedings must be inaugurated by a petition for original construction and completion by the city and county. The board is thereupon required to procure plans and estimates of cost of such original construction and completion, and, after they have been furnished, to solicit offers for the sale to the city and county of an existing utility such as is mentioned in the petition. If the price demanded is deemed too high, the board must proceed to formulate propositions in accordance with its own plans.

''The petitions referred to ask not only that the real and personal property of the four corporations be purchased, but also their franchises. There is no provision of the charter which authorizes the acquisition of franchises by the city and county. If it should acquire the physical properties of the corporations, it would not need to purchase their franchises in order to operate them. The plans and estimates furnished by the engineer could not possibly include an estimate of the cost of the franchises. And yet the board of supervisors would have no power to eliminate the proposition to purchase the franchises if the petitions are otherwise sufficient.''

For the reasons and in the particulars stated here and in the opinion of the trial court, the petition does not, in our opinion, conform to the requirements of section 3 of article XII of the charter; and upon that ground, as well as upon the ground that no adequate means are provided, either within or without the charter, whereby the respondent herein might expeditiously, intelligently and effectively verify the signatures to a petition for the acquisition of public utilities, he should not be required to certify to the genuineness of the signatures to the petition in the present case, and, therefore, the petition for a writ of mandate to compel him to do so was properly denied and dismissed.

Incidentally to the main discussion plaintiffs and appellants complain of the trial court's ruling whereby, upon motion of

the respondent, certain paragraphs of the petition for mandate were stricken out.

The matter stricken out merely pleaded the written opinion of the city and county attorney as to the form and sufficiency of the petition, which was given in response to a request for legal advice made by the board of supervisors. Clearly, that opinion was not any more binding upon the respondent than it was upon the city attorney himself; and that respondent was justified in not following the city attorney's first views of the law and interpretation of the charter provisions is best evidenced by the fact that, upon more mature consideration of the subject, the latter arrived at a different conclusion, and then strenuously and successfully opposed the plaintiffs' suit upon an interpretation of the law and the charter which the trial court approved and which accords with our own views. In any event the city and county attorney's opinion of the law was not conclusive upon the trial court, and, as matter of pleading, it could serve no useful purpose. It was therefore properly stricken out of plaintiffs' petition for mandate.

The judgment appealed from is affirmed.

Hall, J., and Kerrigan, J., concurred.