**DAVIS, Plaintiff-Appellant v. DAVIS, Defendant-Appellee.**

Ohio Appeas, Second District, Frankin County.

No. 3641. Decided August 1, 1944.

Druggan & Gingher, Columbus, for plaintiff-appellant.
Robert L. Barton, Columbus, Thomas M. Potter and John J. Chester, Columbus, for defendant-appellee.

**OPINION**

By BARNES, P. J.

The above-entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas, Domestic Relations Division, Franklin County, Ohio.

On June 15, 1942, plaintiff filed her petition against the defendant, Davis, and some fifteen other defendants, praying for alimony, temporary and permanent, out of the money, property and assets of the defendant Davis, described in the petition, either in his possession or in the possession of the defendant firms. Plaintiff's action was one for alimony alone. Defendant's answer was a general denial. The trial court found the allegations of plaintiff's petition to be true, and that the defendant was guilty of gross neglect of duty toward the plaintiff, and further, had abandoned plaintiff without

good cause on March 16, 1942. The Court held by reason of the above that plaintiff was entitled to a division of the property and awarded her $21,500.00 cash and the cancellation of a note. The Court further held that the Reno divorce must be recognized.

Thereafter, within due time, plaintiff, through her attorneys gave notice of appeal on question of law and thus the case was lodged in our Court.

Appellant's assignments of errors are stated under 12 separately stated and numbered specifications. Counsel in their briefs have reclassified these assignments under four separate headings as follows:

I. The parties are not divorced.

II. The trial court did not have jurisdiction to make a division of the property of the defendant.

III. The trial court erred in denying plaintiff an allowance for her expenses and attorney fees.

IV. Award of the trial court to the plaintiff is inadequate and inequitable.

We can at once take up these assignments and we will do so in order.

The first raises the issue that the parties are not divorced.

This question was not presented through the pleadings, but was gone into very fully in the evidence.

It appears from the record that a divorce had not been granted at the time plaintiff filed her petition for alimony. The petition contains the allegation that on a day named the defendant abandoned her and under the pretense of going to Hot Springs for his health, went to Reno, Nevada, for the purpose of procuring a divorce. The petition sets out in detail the attending facts as to defendant's acts and conduct in going to Reno.

The petition further alleged that plaintiff, after she had been abandoned by the defendant, ascertained that defendant for a period of one to two years had been keeping company with another woman. It is disclosed from the evidence that this woman also made the trip to Reno, and that defendant now claims to be married to her. At the time of the filing of plaintiff's petition for alimony, plaintiff alleged on information and belief that defendant was in Reno for the purpose of procuring a divorce; that he had no grounds upon which to base any action for divorce, and further, that the trial court in that state had no jurisdiction to hear the action.

Defendant filed answer in September, 1942. As heretofore stated this answer was a general denial. No averment was

contained therein setting up the defense of divorce. This, we think, was essential to a presentation of this issue.

It is not necessary for the plaintiff to raise this issue in support of her claim for alimony. She did in her recital of historical facts allege that she believed defendant was in Reno for the purpose of bringing an action for divorce. Now this is not the equivalent of alleging that he had obtained the divorce. It was supporting of the allegation of abandonment.

It was not essential that defendant make this question an issue by averring in his answer that he was divorced. If it was desired to raise the question as to the effect of divorce upon the question of alimony, then it was necessary to bring the issue into the case by answer.

Not having done so, the issue stands on the allegation of plaintiff's petition as an action solely for alimony and not for a division of property as is permitted in actions of divorce.

The above recitals and conclusions were not raised either in oral argument or through the briefs. This is probably due to an inadvertence or through a difference of opinion on the legal proposition.

By reason of this fact we will take up and consider the question just the same as though the issue was presented in the pleadings that the defendant claims to be divorced by the action of a court in the state of Nevada.

The evidence presented in the record very fully and adequately shows that defendant's claimed domicile in Reno was a sham and that he did not have a bona fide residence or domicile within that state.

The conclusion is irresistible that the defendant went to Reno for the sole and only purpose of procuring a divorce; that he took up the residence in some apartment and there bided his time for filing his petition. The defendant sought to have the plaintiff assist him in his procurement of a divorce, but she did not so do. In at least one of his letters he spoke about getting through and getting back home. As soon as he procured his divorce he hastened back home. No one can read the record and have any other idea than that the defendant's going to Reno and his stay there was purely for the purpose of bringing his action for and procuring a divorce, and that there was always the intention to return to his Ohio home as soon as he got the divorce.

The courts have universally held that this conduct does not constitute a domicile. As a definition of the term "domicile", we make reference to 14 O. Jur., p. 564, §3. Reference is also made to the case of **In re estate of Stephan, 31 Abs 457, 459:**

"In law domicile means the place where one has voluntarily fixed his habitation, not for a temporary or special purpose, but with the intention of making it his permanent home and to which, whenever he is absent, he intends to return."

Bouvier's Law Dictionary.

"A domicile can only be changed by making a new home with intention of abandoning the old and to adopt the new."

We also refer to the case of District of Columbia v Murphy, 82 L. Ed., 338 Supreme Court of the United States.

Under the record and the law there is no difficulty in determining that the defendant-appellee in the instant case was not a bona fide resident of Reno, either at the time when he made his application and filed his petition for divorce or when he was granted the decree.

The legal question presented is whether or not under the full faith and credit provisions of the United States Constitution the trial judge was bound to recognize the divorce decree procured by defendant in Reno.

If so, then the parties were divorced; if not, then there was no divorce. This principle of law is well recognized by all parties. The trial court determined that under the full faith and credit provision he was bound to recognize the action of the Reno court and hence the parties were divorced. Counsel for appellee claim that the court in making this finding is conclusively supported by the case of Williams v North Carolina, 317 U. S., 287; 63 S. Ct. 207.

This was a criminal action originating in the state of North Carolina, wherein the defendants, Williams and Hendricks, were jointly indicted for the crime of bigamy, tried, convicted and sentenced, and thereafterwards affirmed in the various state courts, finally being taken to the United States Supreme Court on a writ of certiorari. A casual reading of this case would lead to the conclusion that it was analogous to the instant case.

A more careful reading will disclose that the decision of the United States Supreme Court in the Williams case was based on a different question. In the instant case the theory of no divorce is based on the claim that the same was fraudulently procured by false representation of domicile within the state of Nevada. Judge Douglas, in deciding the Williams case, expressly determines that the question of bona fide domicile is not involved. On page 291 of the opinion reference is made to the case of Bell v Bell, 181 U. S., 175,

"a case in which this court held·that a decree of divorce was not entitled to full faith and credit when it had been granted on constructive service by the courts of a state in which neither spouse was domiciled. But there are two reasons why we do not reach that issue in this case. In the first place, North Carolina does not seek to sustain the judgment below on that ground. Moreover, it admits that there probably is enough evidence in the record to require that petitioners be considered 'to have been actually domiciled in Nevada.'

"In the second place the verdict against petitioners was a general one; hence, even though the doctrine of Bell v Bell, supra, were to be deemed applicable here, we cannot determine on this record that petitioners were not convicted on the other theory on which the case is tried and submitted, viz., the invalidity of the Nevada decree because of Nevada's lack of jurisdiction over the defendants in the divorce suit."

At this point it is necessary to state that a casual reading might give the impression that the last paragraph of the above quotation refers to jurisdiction on the question of bona fide domicile. The Court goes on to say:

"Accordingly, we cannot avoid meeting the Haddock v Haddock issue in this case by saying that the petitioners acquired no bona fide domicile in Nevada. **If the case had been tried and submitted on that issue only we would have quite a different problem as Bell v Bell indicates.**" (Emphasis ours.)

In the case of Haddock v Haddock, 201 U. S. 562, we find the following legal principle announced:

"A suit for divorce brought in a state other than that of domicile of matrimony against a wife who is still domiciled therein is not a proceeding in rem justifying the court to enter decree as to the res or marital relation entitled to be enforced outside of the territorial jurisdiction of the court."

This was the legal principle the United States Supreme Court was discussing in the Williams case, supra, and it was the Haddock case, supra, that was reversed through the decision in the Williams case.

The principle announced in the case of Bell v Bell, supra, which in its factual situation is similar to the instant case was not reversed and hence is still the law.

The Supreme Court of the United States in the Williams case, supra, did not enter final judgment but reversed and remanded for further proceedings according to law. The defendants were again tried in the North Carolina state court on

the theory that the defendants perpetrated a fraud on the Nevada courts in representing that they had a bona fide domicile within that state. This brought the case directly within the provisions of the case of Bell v Bell, supra.

The defendants were again convicted and the conviction sustained by the court of last resort in the state of North Carolina. This last decision of the North Carolina courts is not reported, but counsel for plaintiff have presented to us a typewritten copy of the court's opinion. This opinion very fully reiterates what is apparently the universal rule that where a Reno divorce is obtained through a fraudulent misrepresentation of domicile within that state, the full faith and credit provisions of the United States Constitution do not require that such divorce be recognized in any other state.

The Williams case is again pending in the United States Supreme Court on application for a writ of certiorari following the second conviction of the defendants. Since the decision in the Williams case by the United States Supreme Court many state courts have had occasion to consider its scope, and universally it has been declared that the Williams case does no more than reverse the case of Haddock v Haddock, 201 U. S., 562, and leaves undisturbed the case of Bell v Bell, 181 U. S. 175.

At the risk of repetition, we want to make it clear that the case of Haddock v Haddock denied the right to secure a divorce in a state other than that of domicile of matrimony where the spouse is still domiciled in that state. In other words, a husband or wife could not leave the domicile of matrimony and go to another state and therein acquire a domicile, no matter how long he or she resided therein, that would entitle him or her to bring an action for divorce within that state where the other spouse still resided in the domicile of matrimony.

The reversal of that decision now removes that objection to the procurement of a divorce in a state other than that of the matrimonial domicile. In other words, a husband or wife may remove to another state and after having obtained a bona fide domicile within the state, and a compliance with all other conditions as required under the laws of that state, may petition for and obtain a divorce within the state in which such person has taken up a bona fide domicile.

This still leaves the question as decided in the case of Bell v. Bell, surpa, that the person must have a bona fide domicile within the state to which he removes before he has a right to bring an action for divorce within that state. In other words, he or she may have been within the state the requisite period

as prescribed under the laws of that state, but there still remains the question as to whether or not such person has acquired a **bona fide** domicile therein. (Emphasis ours.)

It is practically a matter of common knowledge, that people who go to Reno to obtain a divorce do so because they possibly have no grounds that could be asserted within the state of the matrimonial domicile and experience teaches that it is easy to obtain divorces in Nevada.

As bearing on the question of the scope of the Williams case, supra, we refer to the following cases:

Oberlander v Oberlander, 39 N. Y. S. (2d) 139;
Girard v Girard, 41 N. Y. S. (2d), 77;
Jiranek v Jiranek, 39 N. Y. S. (2d), 523;
In re Bingham's Will, 39 N. Y. S., 756;
McCarthy v McCarthy, 39 N. Y. S. (2d), 922;
Schnabel v Schnabel, 39 N. Y. S. (2d), 972;
McKee v McKee, 39 N. Y. S. (2d), 859;
Standish v Standish, 40 N. Y. S. (2d), 538;
Gibson v Gibson, 41 N. Y. S. (2d), 598;
Reese v Reese, 40 N. Y. S. (2d), 468.

All of the above are New York cases, and while not from the court of last resort in that state, yet we find the same well considered and pointing out the scope and limits of the case of Williams v North Carolina, supra.

In many of the cases attention is called to the fact that the decision of the Supreme Court goes no farther than to reverse the case of Haddock v Haddock, supra. Practically all refer to the fact that the United States Supreme Court case of Bell v Bell is still the law as it relates to the full faith and credit provisions under the United States Constitution in divorce actions where the question of bona fide residence is involved. Cases from other states along the same line are the following:

Hooker v Hooker, (Conn.), 32 Atl., (2d) 68;
Bowditch v Bowditch, 314 Mass., 410, (50 N. E. (2d) 65);
Wolff v Wolff, (N. J.) 34 Atl. (2d), 150;
Wilkes v Wilkes, (Ala.), 16 So. (2d), 15;
Commonwealth, ex rel. Esenwein v Esenwein, (Penn.), 35 Atl. (2d), 335.

The cases cited above including the New York cases discuss the question present in the instant case and universally hold that the question of bona fide domicile may be inquired into without violating the full faith and credit clause of the United States Constitution.

We also refer to **14 O. Jur. 133, p. 536.** The section reads as follows:

"In view of the elementary rule that jurisdiction of the subject matter is essential to the validity of a judgment or decree, it is held that the full faith and credit clause of the federal constitution does not apply to a judgment or decree rendered by the court of a foreign state, in a divorce proceeding, without jurisdiction of the subject matter, and that such question of jurisdiction is open to inquiry whenever the fact of such divorce is brought in question in the courts of another state."

Also Section 134:

"In order for a court of another state to acquire such jurisdiction of the subject matter in a divorce proceeding as to entitle a judgment rendered therein, to recognition in the courts of Ohio, it is essential that either one or both of the parties have a **bona fide** domiciliary residence in such state. Therefore, a decree of divorce under a statute of another state authorizing the divorce where neither of the parties is domiciled therein is of no force or effect in Ohio; at least, where the parties have their domicile in this state." (Emphasis ours.)

"As a general rule, the residence of a person in another state for the sole purpose of conferring jurisdiction of a divorce proceeding will not be recognized as valid. It is held accordingly that where parties are resident in this state, and one of them removes to and resides in another state for the sole purpose of maintaining there an action against the other for a divorce, such residence, not being bona fide, is not sufficient to confer jurisdiction upon the courts of such foreign state and that an action so instituted will be disregarded by the courts of Ohio."

**Van Fossen v Van Fossen, 37 Oh St 317.**
**In re Estate of Stephan, 31 Abs 457.**
Counsel for defendant-appellee in their brief cite the following cases with arguments:
Williams v. North Carolina, 317 U. S. 287;
**Slapp v Slapp, 143 Oh St 105;** (Ohio Bar, Apl. 3, 1944);
**Slapp v Slapp,** Court of Appeals, Summit Co., **73 Oh Ap 444;** (Counsel for appellant has appended in their brief copy of opinion of the Court of Appeals in the above entitled cause.)
In re Holmes Estate, (N. Y.) 52 N. E. (2nd), p. 424.
We have already discussed the case of Williams v North Carolina, supra, and pointed out why it is not applicable to the

instant case. As heretofore stated, the Williams case makes no determination on the question of bona fide domicile.

We next take up the case of **Slapp v Slapp, 143 Oh St 105.** The Supreme Court does not touch our question for the following reason: the question was unmistakably in the case until it reached the Supreme Court. In the trial court, Mrs. Ruth E. Slapp filed her petition seeking temporary and permanent alimony on the ground of gross neglect of duty and extreme cruelty. An order was made for temporary alimony of $152.67 per month, which payments defendant regularly made. The case continued for a matter of three years without being brought to trial. In March, 1942, the defendant, Maurice E. Slapp, went to Reno and after remaining there the requisite period, filed an action for divorce and in due time the same was granted. Mrs. Slapp did not enter her appearance in the Nevada action, nor was she personally served with summons. The service was by publication. Two days following his divorce he married in Reno a woman as his second wife. A few days later Mr. Slapp and his second wife returned to Akron and there took up their residence. In June following, the plaintiff, Ruth E. Slapp, filed an amended petition charging the defendant with gross neglect of duty, extreme cruelty and adultery, and praying for divorce. continued temporary alimony and on final hearing, permanent alimony.

Personal service was made upon the defendant.

Upon hearing the trial court determined that the divorce procured by the defendant in the state of Nevada was null and void, granted a divorce to the plaintiff, Ruth Slapp, making a division of the property, fifty-fifty. The defendant husband gave notice of appeal on question of law.

The Court of Appeals determined that the trial court was in error in denying the validity of the Reno divorce brought as an issue in the case through defendant's answer. The Court of Appeals sustained the judgment of the trial court in all other particulars.

Both parties gave notice of appeal, but the wife did not perfect her appeal. The case came to the Supreme Court on defendant's appeal. It appears at once that by reason of the fact that the wife did not perfect her appeal, all questions relating to the Reno divorce were eliminated. The Supreme Court so stated in the opinion by Hart, J.

On page 110 of the opinion appears the following:

"Since the Court of Appeals found that the divorce granted to the defendant in Nevada was valid under the full faith and

credit clause of the Constitution, which finding in the absence of appeal has become final, this court will assume for the purpose of decision in this case that the decree was valid and severed the marital relationship of the parties."

The Court of Appeals in this same case held that the Reno divorce was valid and that under the full faith and credit clause of the Constitution the trial court was bound to recognize it and was in error in its determination that there was no divorce. This opinion is not reported, but we always accept opinions or articles from any source for the purpose of assisting us in analyzing the question before us. In reading the opinion of the Court of Appeals appended to the brief of counsel for appellee, it clearly appears that the Court construes the case of Williams v North Carolina, supra, differently from what we do.

It may be presumptuous, and probably is, to question the clarity of a reported decision of the Supreme Court of the United States. Probably we should admit our own ineptness that we did find it difficult to determine the scope of the opinion in this case as announced by the Judge delivering the same. We have heretofore analyzed the Williams case, supra, and do not deem it advisable to do so again.

The next case referred to in the brief of counsel for appellee is Lawson, Appellant, v. Davis, decided by the New York Court of Appeals on November 24, 1943. No reference was made as to where this case could be found. We find what we conclude is the same case entitled, "In re Holmes Estate", 52 N. E. (2d), 424. We are quite sure this is the same case because the date is the same and Davis and Lawson are referred to as parties. This was a New York case and being a decision by the Court of Appeals, which is the highest court within the state, becomes very important if it overrules the decisions of the many other New York Courts whose decisions are listed in earlier pages of this opinion.

Quoted excerpts from the opinion as found in the brief give the impression that the case is probably supportive of defendant-appellee's contention. However, a careful reading of the case will disclose that the court's conclusion was based entirely upon the lack of evidence to support the contention. This is set out very fully in syllabus 8, which reads as follows:

"A Nevada divorce decree was supported by presumption of jurisdiction, and hence, in absence of proof that plaintiff

in such action had not acquired bona fide domicile in Nevada sufficient to support jurisdiction, New York Court required to give decree full faith and credit."

The opinion was by Lehman, C. J., and at the bottom of page 429 and on top of page 430, appears the statement of the Judge from which the syllabus was formulated.

We have now discussed all the authorities cited by counsel for defendant-appellee. The only case that- is really supporting is that in the Court of Appeals of Summit County, wherein was decided the case of Slapp v Slapp, supra. In addition to cases already cited supporting the theory of plaintiff-appellant, we are referred to the case of Williamson v. Osengon, 232 U. S. 619, (58 L. Ed. 758). The opinion was by Mr. Justice Holmes and therein we find the following:

"The essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere, (Story, Conflict of Laws, Section 43); or, as Mr. Dicey puts it in his admirable book, 'the absènce of any present intention of not residing permanently or indefinitely in' the new abode."

Also, District of Columbia v Murphy, 86 L. Ed., 338, opinion by Mr. Justice Jackson of the United States Supreme Court:

"How permanent was his domicile in the community from which he came? Had it long been a family seat, or was he there a bird of passage? Would a return to the old community pick up threads of close association? Or has he so severed his relations that his old community is as strange as another? Did he pay taxes in the old community because of his retention of domicile which he could have avoided by giving it up? Were they nominal or substantial?"

We have thus far examined all authorities cited bearing on the question of domicile and its relation to the full faith and credit provisions of the United States Constitution relating to divorce actions. After examining and reviewing the numerous. cases cited on the question of domicile, we are more firmly committed to the view that the issue of divorce is not really involved in the case for the reason that the same was not presented through the pleadings. If we are correct on this question, then it necessarily follows that the Court had no right to make his determination of the question of defendant's divorce

Under this situation, the case stood as an application for alimony predicated under §11997 GC.

This is the section which provides for alimony alone and not a division of property. Unquestionably, this was the form of action brought by the plaintiff and had defendant desired the trial court to determine the legal effect of divorce on plaintiff's cause of action, it certainly was his duty to bring that issue into the case by pleading. Not having done so, it is our judgment that the trial court had no authority to adjudicate the case upon the theory that a divorce had been granted to the defendant-appellee.

By reason of the fact that this question was not raised in the briefs we have very fully considered the case the same as though the issue had been presented through the pleadings. Under the evidence and the law we arrive at the same conclusion and thereby it becomes immaterial as to the proper theory upon which the case should be decided. Under either theory, we find the trial court was in error in finding that there was a subsisting Nevada divorce.

This brings us to the second assignment of error:

"The trial court did not have jurisdiction to make a division of the property of the defendant."

This is unquestionably the law under the form of action brought by the plaintiff-appellant. Admittedly her petition was filed under the provisions of §11997 GC.

Sec. 11998 GC describes the limitation of the former section. The Supreme Court of the state of Ohio in the case of **Durham v Durham, 104 Oh St 7,** very definitely determines that the trial court is not authorized to make a division of the husband's property in an action for alimony alone, but is confined by §11998 GC to make an award for maintenance and support. In the opinion will be found a discussion as to the distinction between the section authorizing maintenance and support and the section authorizing division of property where divorce is granted. Under the authority of this Court we must hold that the Court was in error in making a division of property, but under the issues it should have made the allowance to the plaintiff for maintenance and support. Counsel for defendant-appellee argues that the plaintiff did not present the necessary evidence for the court to make an allowance to the plaintiff for maintenance and support. We cannot agree with this contention. Counsel for defendant also argue that plaintiff's case was presented entirely upon the theory of a

claim for division of property such as was made by the court. Again, we cannot accept this theory. It is true that under an application for alimony alone much of the evidence would be similar or even identical in kind as if the court was called upon to make a division of property where a divorce was involved.

For the same reason as announced relative to assignment No. 1, we determine that the Court was in error under assignment No. 2.

The third assignment of error is as follows:

"The trial court erred in denying plaintiff an allowance for expenses and attorney fees."

Plaintiff's petition contained a prayer for such allowances. Sec. 11994 GC is the Code section prescribing the procedure for allowance of temporary alimony, including expenses of suit. In the instant case this claim was not pressed until the last day of the trial. At that time counsel for plaintiff presented evidence as a predicate for this temporary allowance. The trial court denied the allowance upon the ground that the application was not presented in proper time. He did say at that time that notwithstanding his refusal to make a separate allowance, he was taking into consideration this question in determining the gross allowance to be made to the plaintiff as alimony. It probably would be proper for the Court to say that plaintiff was not prejudiced if in fact she received in the gross allowance an amount sufficient to cover expenses of trial and permanent alimony. However, it is very difficult for a reviewing court to determine this question. Under any situation we think it preferable that the trial court make specific allowance for temporary alimony where an application for such is made. It is our judgment that an application for temporary alimony may be pressed at any time before the final disposition of the case by the trial court. We can see no objections to plaintiff waiting on her application for temporary alimony until the closing hours of the trial for the reason that at the time the Court would be better able to determine the question of the expenses of suit. It certainly can make no difference to the defendant whether the application filed in connection with the petition is brought to hearing before the trial starts or at its close. Counsel for defendant refer us to two New York cases, and under their language would support appellee's theories. However, the statute in New York is entirely different from the Ohio statute. In New York the allowance is made on the theory that the applicant is not able to pay her own expenses or maintain herself during the pend-

ency of the action. Of course this is not the theory under the Ohio law.

Since we are reversing, this question becomes unimportant except as a suggested guide when the case is retried.

Assignment No. 4 reads as follows:

"Award of the trial court to the plaintiff is inadequate and inequitable."

The members of our Court are not in accord on this question. We are again confronted with the question that is not important except as it may be suggestive in the retrial of the case. Again this question will not be important since when retried it will be upon an entirely different theory. We make no further comments under this assignment.

We reluctantly determine a reversal in this case for the reason that according to our past experience the trial court has been so uniformly correct in its conclusions that it is not easy to find that he is in error in this case.

The judgment of the trial court will be reversed and the cause remanded for a new trial.

GEIGER, J., concurs.

HORNBECK, J., dissenting:

I dissent from the judgment of reversal and disagree with the conclusions drawn by Judge Barnes to support his opinion respecting the assigned errors.

In fairness to the parties, their counsel and, especially the trial judge, who may have to try this case again and is entitled to our view of the law because of the difficult questions presented, and as it is our obligation to pass on each error assigned, §12248 GC, I shall express my opinion on all of them.

THE ISSUES.

The basic questions on this appeal relate to the issues and the effect of the Reno divorce decree.

It is common practice for courts to indulge in great liberality of procedure in divorce and alimony trials.

I agree, that upon the pleadings, no issue is drawn as to the validity of the divorce decree to defendant. This does not invalidate the judgment and any necessary amendment of the pleadings to conform to the evidence upon which the judgment was entered may be made even in this court.

It conclusively appears that, by common consent and with-

120

out the interposition of a single objection to the testimony on the subject, the question of the existence and the effect of the Reno divorce decree was projected into the case, fully tried and upon the facts developed adjudicated, and was, and still is, the subject of most of the difference of viewpoint as to the applicable law.

If a case is fairly tried, submitted and decided upon issues not in reality raised by the pleadings, it is then too late to raise objection thereto. **Larimore v Wells, 29 Oh St 13; Bacon v Daniels, 37 Oh. St. 279.** The parties having without objection by the factual development made the issue as to the existence, validity and effect of the Reno divorce decree, pages 503, et seq. of the bill of exceptions, it may not at this late date be withdrawn, nor do I understand that counsel for appellant insist that it is not an issue.

It must be kept in mind, that when the petition was filed the divorce had not been granted to the defendant. The petition is lengthy but, in part, avers that the defendant abandoned the plaintiff without just cause, and that he is chargeable with gross neglect of duty, both of which grounds were found by the trial judge to have been proven and no appeal is prosecuted by the defendant.

Some of the facts which it is alleged constitute the charges against the defendant are:

1. The defendant has attempted to prevail on plaintiff to aid him in fraudulently securing a divorce in Reno, Nevada.

2. Defendant has brought an action for divorce in Reno, that it is pending but no valid cause or grounds now exist or ever have existed upon which the defendant can obtain a divorce from plaintiff.

3. No service of summons has been made upon plaintiff and she has not entered her appearance in said action and the Nevada court has no jurisdiction of the subject matter of said action or of the plaintiff.

When the cause came on to be tried the decree in Nevada had been granted to defendant but it was not brought into issue by any pleading.

It will also be observed that the petition does not aver that the defendant had no bona fide domicile in Reno, but that, because plaintiff had not been summoned and because she had not entered her appearance the court did not have jurisdiction.

It becomes evident then, that any issue as to the lack of jurisdiction of the Nevada court because the defendant had no domicile there, came into the case not upon the petition but by the factual developments which first the plaintiff and then the defendant produced and submitted to the court.

The averment that the defendant had no cause of action for divorce against plaintiff, if proven, under the authority of Haddock v. Haddock, supra, would have invalidated the decree. As the Williams case was not decided until November, 1942, and the petition here was filed in June, 1942, it is probable that counsel framed it in the light of Haddock v. Haddock. This is the issue that went out by the decision in the Williams case.

### THE LAW OF THE CASE.

Judge Barnes devotes twenty pages to the law of this case as it affects the Reno divorce decree and counsel have briefed the question at length. He correctly, in my opinion, concludes that the case of Williams v. North Carolina, supra, does not overrule Bell v. Bell, supra, and holds that a decree of divorce is not entitled to full faith and credit under the federal Constitution when it has been granted on constructive service by a court of a state in which neither spouse is domiciled. In other words, he holds that the jurisdiction of the Nevada court could have been raised and considered by proper pleading in the instant case. This construction of the Williams case is in conflict with Slapp v. Slapp, supra.

Notwithstanding the extended elucidation of the law in the principal opinion, I am unable to find any tenable support for the claim that the trial judge was mislead by any of the cited cases as to the law of this case. At no place does he cite the Williams case or make any comment from which it may be inferred that he felt that he was precluded from trying the question of the jurisdiction of the Nevada court. The rceord is conclusive to the contrary, ese pages 501-508, inclusive; 758-761, inclusive.

Findings of law and fact taken from the written opinion of the court are on file. If the trial judge misinterpreted the law, or drew an improper conclusion from the facts, upon the question of the domicile of the defendant in Reno, or upon the right of the court to consider this question as it affected the validity of the decree, why were these questions not made the subject of specific findings of law and fact.

Moreover, it clearly appears that the trial judge did consider the question of the domicile of defendant as it affected the jurisdiction of the Nevada court to render the divorce decree. In his opinion and in the findings of law and fact, he says:

"The Court does find, **as a matter of fact, from the evidence adduced here** that a divorce was granted in Reno, **and that from the evidence submitted in this case, that Court did**

**have jurisdiction** as required by the laws of the State of Nevada in compliance with their laws." (Emphasis ours.)

Finally, the appellant does not claim that the court did not consider the question of the validity of the Reno decree on the evidence, as to the residence of defendant, but that his conclusion with respect thereto is erroneous.

THE QUESTION OF JURISDICTION OF NEVADA COURT.

We may not say, as a matter of law, that the defendant had no domicile in Reno.

Upon the introduction of the Nevada divorce decree the defendant made a prima facie case which was sufficient, standing alone, to support its regularity and validity in every essential, including the jurisdiction of the Court, 14th syllabus, Williams v North Carolina, supra.

Upon this prima facie case, the further supporting testimony and the conflicting inferences to be drawn from the correspondence and testimony of the parties, there is an issue of fact which may not, as a matter of law, be resolved against the defendant.

As to the effect of the introduction of the decree, see Cardindale v Cardindale, (Cal.) 68 P. 351; Miller v Miller, (Mass.) 150 So. 112; Renner v Renner, 181 Atl., 191; Davis v Davis, 8 P. 2d, 286; Jenkins v Jenkins, (Ala.) 194 So. 493; Warren v Warren, (Cal.) 15 P. 2d, 556; State v Cooke, (Conn.) 148 Atl., 385; Grein v Grein, (Ill.) 25 N. E. 2d, 409; State v Williams, et al., (Unreported), Supreme Court, North Carolina, Spring Term, 1944.

The majority in Williams v State of North Carolina, upon facts much stronger against the divorcees than here upon the question of their domicile, would not say, as a matter of law, that they did not have a domicile in Nevada where their decrees were rendered. True, Justice Douglas, in the majority opinion, stated as one reason for recognizing the jurisdiction of the Nevada Court, that North Carolina was not urging the claim that the record established that the divorcees had no domicile where their decrees were granted, but this was not a sufficient reason for reversing the judgment, if, as a matter of law, as held by Judge Barnes in this case, the defendants had no bona fide domicile in Nevada. Justice Frankfurter, in his concurring opinion, likewise refused to follow the law as announced by the principal opinion in this case.

Moreover, in the instant case, there is, independent of the effect of the decree of divorce, a factual issue as to the

bona fides of the domicile of defendant in Reno. Briefly, some of the facts, which must, on the question now before us, upon defendant's testimony be given favorable interpretation to him are, that he left his former home to get a divorce with the knowledge of his wife and to avoid publicity of his claim and resulting embarrassment to her; that he had a cause of action, which in his judgment, would have supported a decree in his behalf if his suit had been begun at New Lexington; that he went to Reno with the intention of making it his home; that he rented an apartment and had some of his effects in it; that he retained his apartment in Reno and had it at the time of the trial in the instant case; that he registered for selective service, and to vote, in Reno; that he considered it his home, expected to return there and came East because of the necessity of defending the suit for alimony instituted against him by his wife and which suit affected all of his property interests in Ohio.

The defendant was actually present in Reno for a period of time sufficient to meet the legal requirement as to domicile there, if it was coupled with the requisite intention. It is fundamental that the question of one's residence, in part, is a matter of intention and it is common knowledge that many men have their domicile at a place where they are infrequently present. It is correct to say that if the defendant went to Reno for the sole purpose of securing a decree of divorce and with no intention of establishing and maintaining a residence there, the Court had no jurisdiction, but if he went there for the purpose of getting a divorce and with the knowledge that he was not entitled to invoke the jurisdiction of any court there unless he had a bona fide residence and domicile and intended to and did establish such a residence, then the Court had full jurisdiction to grant his decree.

"Intention to acquire a new domicile, and not purpose in making change, is pivot on which inquiry turns as to whether party had obtained domicile in another state for purpose of obtaining divorce decree." Renner v Renner, (N. J.) 181 Atl. 192.

RIGHT OF COURT TO MAKE DIVISION OF PROPERTY.

The principal opinion holds that because the plaintiff did not pray for a divorce, even though divorced by the Reno decree, upon the authority of **Durham v Durham, 104 Oh St 7,** the trial judge was without authority to make division of defendant's property, award part thereof to plaintiff and make determination of the full rights of the parties as to the property. This was my first impression which upon more mature

consideration I have abandoned for two reasons: First, upon the authority of Slapp v Slapp, supra, and upon the logic of the opinion of Judge Hart in the case, the court could properly make equitable division of defendant's property having first found that plaintiff had grounds for divorce, but that because of the Reno decree to the defendant and because she did not pray for divorce, it could not be granted to her.

The facts in the Slapp case are fully set out in the majority opinion and I shall not restate all of them. Suffice to say, that when plaintiff's case went to trial she had prayed for divorce and alimony. When it reached the Supreme Court, because the plaintiff had not appealed, the question as to the validity of the defendant's decree of divorce was no longer in the case and the Supreme Court had to reconcile it as valid. However, it was urged by the defendant that, as a decree of divorce had not been and could not be granted to the plaintiff, the Court could not under the Durham case make division of the property. The Court held that the Durham case did not apply, and that the trial judge did not err in granting a decree for permanent alimony which included a division of property. Judge Hart directs attention to the fact that a decree of divorce had been given to the defendant, and that this supported an award of permanent alimony to her upon her proof that she had grounds for a divorce even though it could not be granted to her.

In this case, the parties were divorced though plaintiff did not seek such a decree. She established grounds for permanent alimony and divorce and was entitled to the benefits thereof which the Court awarded to her from the property of the defendant. It was not done upon the theory upon which plaintiff instituted her suit, but upon the facts developed and the law controlling and, as both parties were before the Court, the relief granted was appropriate.

The second ground supporting the right of the trial court to divide defendant's property is predicated upon the admission of counsel for the plaintiff that the court had that right, if he found the Nevada divorce decree to be valid.

At the conclusion of plaintiff's case the court had under consideration a motion of defendant to require her to elect upon which of two claimed theories she would submit her case. Court and counsel were discussing the matter at page 503 of the record:

"MR. GINGHER: Well he (the defendant) testified that he has remarried since.

THE COURT: Yes, he has since remarried. That would support the fact that there was a divorce, I don't believe that alone—I don't know whether that divorce is good, **whether they had jurisdiction to grant him a divorce**—

MR. CHESTER: Do you say that we have the burden of establishing what happened out there? You brought the suit—.

MR. GINGHER: We brought the suit before the divorce, if any, was granted.

MR. CHESTER: Have you leave to amend your petition?

THE COURT: They don't have to amend, I don't believe. **I think they can proceed upon the alimony question; the property rights might be established on another suit, if there was a divorce at some future time, she would still hold an interest in the property.** I have no knowledge at the present time of any divorce being granted. There has been some testimony which might indicate there was a proceeding in Nevada, but that is all—that is all."

MR. GINGHER: If Your Honor please, I don't know of any reason why they should require us to elect.

THE COURT: I don't think there is anything to elect here. **You have elected by instituting your action for alimony. Now, whether or not they care to offer evidence and whether they offer evidence to the effect that there has been a divorce granted, if they offer evidence and show a divorce has been granted, then the court might make an order—might dissolve all property rights.**

MR. GINGHER: **That is right."**

And at the bottom of page 506 and at page 507:
The Court addressing Mr. Chester:

"Well, at this time, if you offer no further evidence, the Court could only award alimony from this evidence. I am not so certain but what the election, if there is an election, will fall upon you as to whether or not you are going to defend and assume the position that these parties are still married, or assume the position that they are divorced. Now, if you offer evidence to show that they are divorced; **if you show that the relationship of husband and wife is severed, then the Court would have the right to sever all property rights."**

MR. CHESTER: "* * Now if we offered testimony to the effect that this man is divorced, then by that we have elected under the divorce section, is that right? * *

THE COURT: Well, you have elected to proceed to show that **there was a divorce and the Court would have authority**

to determine and fix all property rights as between the parties."

MR. McNAMARA: If you are satisfied that a valid decree of divorce was entered.

THE COURT: That is right.

MR. CHESTER: Well, is this Court going to find out if there has been a divorce granted?

THE COURT: I don't know—if you offer here a judgment of the Nevada Court to the effect that a decree of divorce has been granted to this party, then the Court, I believe, must accept that, unless there is a showing of no jurisdiction; that would be the only way in which there could be an attack made by this court, that is, the collateral attack would be by lack of jurisdiction, then that would be upon the plaintiff here." (Emphasis ours.)

Because of the position of counsel for plaintiff that the Court had the right to make division of the property of defendant, if he properly found that defendant had been divorced, plaintiff may not be heard in this Court to urge another and different view of the law. **Larimore v Wells, 29 Oh St 13; Bacon v Daniels, 37 Oh St 279; Sprung v E. I. DuPont de Nemours & Co., 16 OO 352, 34 N. E. 2d, 41.**

Finally, in fairness to counsel for appellant, it should be said that there is no change in their position here from that taken in the trial court, as appears from plaintiff's brief, page 20.

## AWARD.

Upon this assignment it is not a question whether the members of this Court, if hearing the cause originally would have awarded a greater sum of money to the plaintiff but, does it clearly appear that the trial judge in weighing the evidence, as he had the right to do, manifestly misconstrued its effect and made an inadequate or an inequitable apportionment of defendant's property to the plaintiff. I cannot so find.

The parties at the time of the award had been married four years. The defendant's holdings were highly speculative in character and subject to possible marked depletion after the conclusion of the war. The Court fixed the worth of defendant at from $125,000 to $200,000 with an income of $22,000 to $34,000 for the last year prior to the trial. The award to plaintiff was $21,500 in cash and the cancellation of a debt which she owed the defendant in the sum of $3100 or a total of $24,600 from which she was to pay her court costs and attorney fees. At the time that the plaintiff married defendant the Court estimated her worth at approximately $15,000. At the time of the hearing it had increased to $25,000 to $45,000 large-

ly because of investments which she had made upon the suggestion of the defendant. When married her income was about $800 a year. At the time of the trial it had increased to about $8000 or more a year, so that much of this increase, no doubt, could be attributed to the marital association between the parties. Considering all the facts, we would not be justified in remanding this cause for retrial because of inadequacy of the award.

### JUDGMENT.

There is no reversible error in the action of the trial court in any one of the four errors discussed in the briefs of the parties. The judgment of the trial court should be affirmed.