[Civ. No. 12175. Second Appellate District, Division Two.—May 10, 1939.]

In the Matter of the Estate of GEORGE L. BRUNEMAN, Deceased. MAE BRUNEMAN, Appellant, v. PATRICIA O'NEIL BRUNEMAN, Respondent.

Caulfield & Keil, C. Harold Caulfield, Edward D. Keil, Robert McMahon and William J. Dooling, Jr., for Appellant.

Zagon & Aaron and Harold E. Aaron for Respondent.

WOOD, J.—George L. Bruneman died on October 25, 1937, leaving an estate consisting of cash in the sum of $20,000. His mother, Mae Bruneman, sought to be appointed administratrix of his estate but the trial court denied her petition and granted letters of administration to petitioner Patricia O'Neil,

who claims to be the widow of deceased. The appeal is by Mae Bruneman from the order granting the letters of administration.

From the findings of the trial court, which are sustained by the evidence, it appears that respondent was married to decedent on April 8, 1930. A petition was filed by decedent in the State of Nevada on June 18, 1936, by which he sought a divorce from respondent and on the following day, June 19, 1936, the District Court of Clark County, Nevada, rendered its decree purporting to dissolve the marriage between decedent and respondent. Both parties to the Nevada action were residents of Los Angeles, California, and neither at any time resided in the State of Nevada. Finding VIII is as follows: "That there was filed in said divorce action in said Clark county, state of Nevada, what purported to be an appearance on the part of Petitioner herein (respondent), the defendant in said action, said appearance having been made by one Morris Wolfman, an attorney; that prior to the entry of said appearance by said Wolfman, he had received what purported to be a Power of Attorney authorizing his appearance in said action on behalf of Petitioner herein, the defendant therein. That said Power of Attorney was procured from Petitioner by decedent under the following circumstances: Decedent handed said paper to Petitioner and asked her to sign the same and told Petitioner that said document was one whereby decedent would be enabled to obtain a valid divorce from Petitioner; that Petitioner, at said time, was not able to read said document without use of eye glasses and that at said time she had no such eye glasses in her possession and therefore was unable to, and did not, read said document; that Petitioner believed that said document related to the commencement of an action for divorce in California and did not know nor was it divulged to her that the same purported to authorize any attorney to appear for her in any action filed in the State of Nevada; or any other place outside of the State of California; that had said Petitioner known the true nature of the contents of said document, she would not have signed said instrument; that said instrument purported to authorize said Wolfman to waive answer and notice of time and place of hearing of the trial of said Nevada divorce action and that had Petitioner known that such were the recitals in said document, she would not have executed the same; and that by

her execution of said instrument, Petitioner was deprived of all opportunity of appearing personally in said Nevada action and of defending the charges set forth in the complaint of the decedent, the plaintiff therein; that said Wolfman was selected, employed and paid by decedent, all without the knowledge or consent of Petitioner; and that the first knowledge that Petitioner had of the granting of said decree was when she read the same in the newspapers following decedent's death. That said Power of Attorney was procured from Petitioner by the fraudulent representation, acts and conduct of and by the decedent."

Appellant argues that respondent "appears not garbed in the raiment of erstwhile wifehood, but in the avaricious weeds of simulated widowship". In support of her contention she points out that respondent did not live with decedent after the granting of the Nevada decree and made no demands upon him for support; that she did not use the name "Bruneman" after June 19, 1936; but used the name Patricia O'Neil; when decedent was shot and confined to a hospital in July, 1937, respondent did not visit him; when he was killed on October 25, 1937, she did not claim his body, although she was at the time in Los Angeles, and made no arrangements for his burial. However much may be said in favor of the justice of appellant's argument we are compelled to uphold the ruling of the trial court in view of the legislation on the subject and the decisions of reviewing courts.

Since decedent was not a resident of the State of Nevada the courts of that state were without jurisdiction over the subject-matter to dissolve the marriage between the parties, who were residents of California. If it be considered that respondent attempted to confer jurisdiction on the Nevada court she was powerless to do so. In such an action the lack of jurisdiction of the court of another state over the subject-matter may be shown in the California courts when an attempt is made to establish rights based thereon. (*In re James,* 99 Cal. 374 [33 Pac. 1122, 37 Am. St. Rep. 60]; *Ryder* v. *Ryder,* 2 Cal. App. (2d) 426 [37 Pac. (2d) 1069]; *Kegley* v. *Kegley,* 16 Cal. App. (2d) 216 [60 Pac. (2d) 482, 483]; *Anthony* v. *Tarpley,* 45 Cal. App. 72 [187 Pac. 779].) In both the Ryder and Kegley cases consent to the entry of foreign decrees had been filed by the defendants, but it was held they were not thereafter estopped from asserting the nullity of

such decrees for lack of jurisdiction of the foreign courts. In *Andrews* v. *Andrews*, 188 U. S. 14, 16 [23 Sup. Ct. 237, 47 L. Ed. 366], husband and wife were residents of Massachusetts. The husband went to South Dakota where he obtained a divorce on simulated claims of residence and thereafter returned to Massachusetts. The wife appeared in the South Dakota court and consented to the decree. Thereafter Mr. Andrews remarried in the State of Massachusetts and upon his death a petition was filed for appointment as administratrix by the first wife, who relied upon the nullity of the South Dakota proceedings. Although the second wife also filed a petition, the Massachusetts court awarded the letters to the first wife. The case was taken to the Supreme Court of the United States under the claim that the full faith and credit clause of the Constitution had been violated, but the judgment of the Massachusetts court was upheld. In the case now before us the factual situation is stronger than in any of the cases above cited, for here the trial court found that respondent had been fraudulently induced to file an appearance in the Nevada court.

The order is affirmed.

Crail, P. J., and McComb, J., concurred.