### NOFFSINGER v. NOFFSINGER et al.
### No. 14767.

District Court of the United States for the District of Columbia.

July 20, 1943.

Lester Wood, of Washington, D. C., for plaintiff.

Jean Boardman, of Washington, D. C., for defendant.

LUHRING, Justice.

This action came on for trial upon the facts without a jury and the Court, having heard the evidence and being sufficiently advised in the premises, now, this 20th day of July, 1943, finds the facts specially and separately states its conclusions of law thereon as follows:

#### Findings of Fact.

1. The plaintiff and the defendant were born in the State of Indiana and were duly and lawfully married at Union City, County of Randolph, in said State on the 10th day of June, 1916.

2. That two children were born of said marriage, namely, Earl L. Noffsinger, born on the 12th day of May, 1917, who is now in the United States Military Service, and James Philip Noffsinger, born on the 30th day of May, 1925, who is under the care and custody of his mother, the plaintiff herein.

3. That, at the time of the grievances complained of, the plaintiff and defendant were bona fide residents of the District of Columbia, and had been such bona fide residents since the 1st day of November, 1936.

4. That the said plaintiff and defendant lived and cohabited together as husband and wife in the District of Columbia until the — day of November, 1940, on which day the defendant wilfully abandoned his said wife and minor child, James Philip Noffsinger, and they have not lived or cohabited together as husband and wife since said date.

5. That the defendant is now and ever since the 1st day of November, 1936, has been in the employ of the American Automobile Association in the City of Washington, District of Columbia, as an educational director in its Safety and Traffic Engineering Department. At the outset of his employment, the defendant received a salary of $3,600, which was increased from time to time until, in the year 1942, such salary amounted to $4,685. Beginning January 1st, 1943, the defendant's salary was increased to $6,000 per annum. The Court further finds that, in addition to the salary received by said defendant, he was at all times allowed his expenses when out of Washington, District of Columbia, on business for said American Automobile Association, and his duties required him to be out of said city the greater part of the time.

6. That the said defendant husband has failed and refused to maintain said plaintiff wife and their minor child in her custody, James Philip Noffsinger, and has not contributed to their support and maintenance since the —— day of August, 1941, although able to do so.

7. That on the 9th day of May, 1942, the defendant was awarded an absolute divorce from the plaintiff on the ground of extreme cruelty by the First Judicial District Court for the State of Nevada, in and for the County of Ormsby. The plaintiff did not appear and contest the action.

8. That the defendant went to the State of Nevada for the sole purpose of obtaining a divorce with no intention of residing in said State permanently or for an indefinite period.

The Court finds as a fact that throughout their married life together the plaintiff was a faithful and devoted wife and mother, and interested in the welfare of her husband and children. The defendant had no ground for divorce either for extreme cruelty or for any other cause. On the contrary, the defendant is solely to blame for the unfortunate situation and, in instituting an action against the plaintiff for divorce on the ground of cruelty in the State of Indiana and later in the State of Nevada, when defeated on jurisdictional grounds in Indiana, acted in bad faith and failed to make full disclosure of the facts.

9. That the defendant was actually, physically and corporeally present in the State of Nevada for a period of only forty-one (41) days before he brought his suit for divorce on the 23rd day of March, 1942, but represented to the Nevada court that he had resided in Nevada for more than six weeks preceding the commencement of his action for divorce.

10. That in order to maintain and support herself and the minor child, James Philip Noffsinger, in the manner in which they were accustomed to live, the plaintiff will be required to expend a minimum sum of $200 monthly.

### Conclusions of Law.

1. That the decree of the First Judicial District Court of the State of Nevada in and for the County of Ormsby in awarding a divorce to the defendant from the plaintiff is invalid in the State of Nevada for the reason that the said defendant acted in bad faith and went to the State of Nevada solely for the purpose of obtaining a divorce and with no bona fide intention of remaining in said State permanently or indefinitely and, therefore, said Nevada court lacked jurisdiction to enter said decree. Said judgment of divorce is not entitled to full faith and credit in this jurisdiction pursuant to Article IV, § 1 of the Constitution of the United States, or the Act of Congress of May 26, 1790, c. 11, 28 U.S.C.A. § 687.

2. The law pertaining to divorces, in force in Nevada in the year 1942 provided in part as follows:

"Divorce from the bonds of matrimony may be obtained by complaint, under oath, to the district court of any county * * * if plaintiff shall have resided six weeks in the state *before suit be brought* [emphasis supplied], for the following causes, or any other cause provided by law:

\* \* \* \* \*

"Sixth —— Extreme cruelty in either party." Section 9460, Nev.Comp.L.1929, as amended L.1931, p. 161.

Section 6405, Nev.Comp.L.1929, defines legal residence as follows: "The legal residence of a person with reference to his or her * * * right to maintain or defend any suit at law or in equity, or any other right dependent on residence, is that place where he or she shall have been actually, physically and corporeally present within the state or county, as the case may be, during all of the period for which residence is claimed by him or her; * * *."

See, also, Lamb v. Lamb, 57 Nev. 421, particularly at page 431, 65 P.2d 872, where the court approves an instruction stating the requirements of the Nevada divorce law as to the time and the period of physical residence required.

In view of the laws of Nevada and the decision of its Supreme Court, this Court concludes that the decree of divorce awarded to the defendant is invalid in said State of Nevada for the reason that the defendant was not actually, physically and corporeally present in the State of Nevada for six weeks before he brought his suit for divorce from the plaintiff, and, therefore, said District Court in and for the County of Ormsby in the State of Nevada did not have jurisdiction to hear and determine said complaint and grant a divorce to the said defendant from the said plaintiff.

3. That for the reasons stated in conclusion numbered two the judgment of the Nevada court awarding a divorce to the defendant is not entitled to the full faith and credit contemplated by Article IV, § 1 of the Constitution of the United States, or by the Act of Congress of May 26, 1790, c. 11, 28 U.S.C.A. § 687.

4. That the plaintiff is entitled to a decree that the defendant shall pay her the sum of two hundred dollars ($200) periodically on the first day of each month hereafter until the further order of this Court for the maintenance of herself and the minor child, James Philip Noffsinger.

5. That the plaintiff is entitled to a decree awarding her attorney's fee in the sum of five hundred dollars ($500).

It is so ordered and counsel for the plaintiff will prepare and submit judgment in accord herewith.

### Memorandum.

It is deemed proper to submit, along with the findings of fact, this memorandum setting forth the reasons which prompted the findings.

The evidence establishes conclusively that from the time of their marriage in 1916 until the year 1940 Mr. and Mrs. Noffsinger lived happily together. The testimony of Mr. Noffsinger before the Nevada court "that shortly after we were married" Mrs. Noffsinger complained about his relations with his family and did not allow him or the children to visit them is refuted here by the testimony of the minor son, James Philip Noffsinger, that during his visits to Indiana he frequently saw his father's folks and that Mrs. Noffsinger never indicated that she did not want him to visit them. Noffsinger's further testimony before that court to the effect that he was "never able to do anything to please her" is answered by the following extract from a letter he wrote to Mrs. Noffsinger (Pltf's. Ex. 20) after seventeen years of married life:

"It ought to make us appreciate how lucky we have been. With the dearest, sweetest little wife in the world and two of the best kind of boys and sure prospects of getting enough money to live on during the hard winter ahead, we ought to be thankful and just hope that nothing happens to spoil our assurance."

In his capacity as an educational consultant in the Safety and Traffic Engineering Department of the American Automobile Association, Mr. Noffsinger traveled quite a bit. In fact, he was on the road most of the time. During the course of his travels in February, 1940, he met Mrs. Eugenia Garavoglia McGuire, a widow, approximately thirty-five years of age, with a thirteen year old child, and who was employed as a secretary in the Automobile Club at St. Louis, Missouri. From that day forward, as his acquaintance with Mrs. McGuire progressed, his indifference toward his wife and child increased. Mrs. Noffsinger early sensed the change in attitude toward her and when it became more marked, the boy also observed it. Of course, the relations between Mr. and Mrs. Noffsinger became strained. His conduct worried her. She spent sleepless nights and finally became ill during the summer of that year. She and her older son made every effort to persuade Mr. Noffsinger to cease his relations with Mrs. McGuire but to no avail. His attitude in that connection is best expressed in a letter written to Mrs. Noffsinger under date of October 31st, 1940, (Pltf's. Ex. 1), wherein he compliments her highly for "a valiant effort to regain that which was lost," but insists that she must believe him "when I say I've honestly tried my best to recapture the feeling I had for you for years" and "at last I am convinced it just can't be done." He continues: "My best suggestion is to maintain separation for a trial period, * * *. With my schedule out of town so much that could easily be done without too much stir." He renews that suggestion in Plaintiff's Exhibit 2.

Matters reached a climax on the afternoon of January 7th, 1941. Noffsinger had come to the apartment for lunch with Mrs. Noffsinger which she had prepared. They discussed their trouble and he insisted that he would quietly obtain a divorce and she must not interfere. When she advised him that she had consulted an attorney and intended to proceed against him, he became enraged and violently beat and choked her until, in her necessary self-defense, she grabbed what has been described as a "boy scout hatchet" and threw it and struck him on the back of the head. He picked up the weapon, left the apartment and went to Emergency Hospital where it was found that the scalp was lacerated and the skull fractured. In the meantime, Mrs. Noffsinger became hysterical, took an overdose of tablets containing hyoscine and, when seen shortly afterward by a doctor in her apartment, she was hysterical and semi-

stuporous. She was taken to the Doctors' Hospital.

Noffsinger's version of this incident has been made the basis of subsequent charges by him of cruelty or extreme cruelty on the part of the plaintiff and on which he based his right to a divorce, both in Indiana and Nevada. At the Nevada trial, Noffsinger testified that "while I was eating lunch she suddenly came up from behind with an axe —a hand axe—and hit me over the top of the head with it—with the sharp edge of it and fractured my skull. In his testimony here, Noffsinger sought to create the impression that the assault with the axe had been premeditated. When asked what she said when she struck him he replied: "Nothing. She just slipped up on me like the Japs at Pearl Harbor."

On May 8, 1941, the defendant filed suit for divorce against the plaintiff in the Randolph Circuit Court in the State of Indiana. Mrs. Noffsinger appeared in the divorce proceeding and filed a plea to the jurisdiction of the Indiana court on the ground that on May 8th, 1941 Noffsinger was not a bona fide resident of the State of Indiana and had not been such a resident of the State of Indiana for one year immediately prior thereto and of Randolph County for six months as required by the laws of Indiana.

Testimony was heard by the court on the plea and, on the 15th day of December, 1941, the plea was sustained and the complaint dismissed for lack of jurisdiction. (Pltf's. Ex. 5). Noffsinger filed a motion for a new trial on the 24th day of December, 1941, alleging the usual grounds that the decision is contrary to law and not sustained by sufficient evidence. (Pltf's. Ex. 6).

Having been defeated in Indiana, Noffsinger decided to go to the State of Nevada to secure a divorce. He swore that it was his intention "to establish my residence and become a citizen of the State of Nevada," but frankly admitted that his purpose was to obtain a divorce. Clearly, he could have had no other purpose since the headquarters of his employer, the American Automobile Association, were located at Washington, D. C., and here was the logical place for him to reside. Indeed, he found it so and moved his family from Indiana to Washington immediately upon accepting the employment November 1st, 1936.

The defendant did go to Reno, Nevada. He testified in the Nevada court that he became a resident of Nevada on the 6th day of January, 1942, but he did not disclose that he was at that very time insisting before the Indiana court that he was a resident of that state and that he did not abandon such claim of residence until the 9th day of January, 1942, by withdrawing his motion for a new trial.

Noffsinger, testifying as a witness before the Nevada court on the 9th day of May, 1942, swore that he first took up his residence in Reno, Nevada on the 6th day of January, 1942, and that since that day he had been physically present in Reno, Washoe County, Nevada, each and every day except for the period from January 16th to February 16th, inclusive, and that during such period he was in Cleveland, Ohio, Detroit, Michigan and Pittsburg, Kansas on business. He further testified that when he came to Reno, Nevada he came with the intention of making it his home for an indefinite period, and that such intention still remained with him and that when he left on the business trip it was his intention to return to his "place of business" at Reno, Nevada again. (Deft's. Ex. 6).

Noffsinger's movements and whereabouts during the period January 16th to February 16th, 1942, inclusive, are definitely traced and fixed by the expense accounts regularly submitted by him to the American Automobile Association (Pltf's. Ex. 9 to 13, inclusive). These expense accounts indicate the purpose of the trip or expenditure and are in Noffsinger's handwriting. They are supported by vouchers from hotels, garages and gasoline stations. Noffsinger was reimbursed by the Association for the moneys expended by him as appears by plaintiff's exhibits numbered 17 and 17A to 17E, inclusive, being the checks of the Association in payment of such accounts.

Considering plaintiff's exhibit number 12, Noffsinger's expense account dated February 15th, 1942, and which covered the period from February 9th to February 14th, 1942, we find that he was in Pittsburg, Kansas, during that period attending the Kansas Professors' Seminar. He left Pittsburg, Kansas, February 14th and is in St. Louis, Missouri, where Mrs. McGuire resided, on the 17th day of February, 1942. Where he spent the time between the 14th and 17th of February is left to conjecture.

Plaintiff's exhibit number 13 is important. This exhibit is dated February 26th, 1942, and is Noffsinger's expense

account for the period covered from February 17th, 1942, to February 25th, 1942, inclusive. The purpose of the trip or expenditure covered by that exhibit is stated to be "N. E. A. Exhibit," meaning the National Educational Association meeting held at San Francisco, California, where the American Automobile Association had an exhibit.

This exhibit 13 is supported by passenger's receipt issued by the Mid-Continent Airlines and, also, by receipt of the Manx Hotel, San Francisco, California. The passenger's receipt, issued by the Mid-Continent Airlines, is stamped St. Louis February 17th, 1942, and calls for airplane transportation from St. Louis, Missouri, to San Francisco via Des Moines, Iowa.

The statement of the Manx Hotel, San Francisco, discloses that Noffsinger was in the State of California for three days, that is, on 20th, 21st and 24th days of February, 1942. Noffsinger asked and received allowances for expenses for those days.

Noffsinger's testimony as to his actual, physical presence in Nevada, as also the testimony of his landlady, the corroborating witness, was definite and positive that he was in Reno from January 6th, 1942 each and every day except for the period from January 16th, 1942 to February 16th, 1942, inclusive. The trial judge was led to believe by Noffsinger and his corroborating witness that the former was actually and physically present in the State of Nevada and resided there for a period of forty-four (44) days before he brought the suit on the 23rd day of March, 1942. In making the count and in conformity with the Nevada statute, the first day of residence, that is January 6th, 1942, is included and the day on which "suit be brought", that is March 23rd, 1942, is excluded.

Noffsinger wilfully concealed the true facts from the Nevada court. He did not disclose the fact, which the evidence conclusively establishes and which he knew to be the fact, that for three days in February, the 20th, 21st and 24th, he was not "actually, physically and corporeally" present in Nevada but on the contrary was in the State of California "on business" for the American Automobile Association. As a

matter of fact, Noffsinger was actually and physically present in the State of Nevada forty-one (41) days before he brought the suit, or less than six weeks. But if we consider that his intention to become a resident of Nevada became definite and fixed on the 9th day of January, 1942, the day on which he abandoned his claim of residence in Indiana by dismissing his motion for new trial, then, since physical presence and intention must concur, he resided in Nevada only thirty-eight (38) days before he brought his suit. In either event, the Nevada court lacked jurisdiction and the divorce is invalid there as it is here.

The divorce is invalid in Nevada for another reason. Noffsinger went to the state solely for the purpose of obtaining a divorce. He had no intention to reside there permanently or indefinitely. He quit the state the 9th day of May, 1942, the very day the divorce was granted, and all he left in Reno was a forwarding address and a small bank account. He was an adept at "making evidence" for himself to be used in this proceeding. With reference to the forwarding address, he said: "I have purposely done it the way I did in order to have an additional claim for residence in the State of Nevada," and when the Court suggested, "In other words, you are making evidence for yourself," he replied "Yes, sir, definitely."

For this purpose he paid the March, 1942 instalment of income tax to the Collector of Internal Revenue at Reno; made application for appointment as a Reserve Officer March 18, 1942, giving his address as 100 Court Street, Reno; paid a poll tax in Nevada September 2nd, 1942; joined the California State Automobile Association the same day, giving the same Court Street address and also obtained a Nevada operator's license, although his District of Columbia driver's permit was still in force.

Finally to complete his folly, he married Mrs. McGuire. The wedding took place in Missouri December 31st, 1942. At that time Mrs. McGuire was living with her parents. Since their marriage they have established a home in St. Louis. No effort was made to establish his longed for home in the State of Nevada.